OPINION
{¶ 1} On September 21, 2005, appellee, Tuscarawas County Job and Family Services, filed a complaint for permanent custody of Jaylynn Bodenheimer born January 8, 2001, Jocelyn Berry born November 2, 2002 and Karly Bunton born August 12, 2004. An amended complaint was filed on September 26, 2005, alleging the children to be neglected and dependent. Mother of the children is appellant, Angie Berry; father of Jaylynn and Jocelyn is Jason Bodenheimer and father of Karly is Chris Bunton.
 {¶ 2} On September 30, 2005, Mr. Bodenheimer's parents, Anthony and Tami Angelo, filed a motion for temporary and legal custody of the children.
 {¶ 3} By judgment entry filed October 25, 2005, the trial court found the children to be neglected and dependent.
 {¶ 4} On November 10, 2005, appellant's father and stepmother, James and Debbie Berry, filed a motion to intervene, seeking legal custody of the children.
 {¶ 5} Dispositional hearings were held on November 15, and December 9, 2005. By judgment entry filed December 15, 2005, the trial court granted permanent custody of the children to appellee.
 {¶ 6} Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:
 I {¶ 7} "THE TRIAL COURT ERRED IN GRANTING PERMANENT CUSTODY TO THE AGENCY WHEN IT FAILED TO FOLLOW THE STATUTORY GUIDELINES SET FORTH IN OHIO REVISED CODE SECTION 2151.412(G) WHICH REQUIRES PRIORITY PLACEMENT OF CHILDREN WITH A SUITABLE MEMBER OF THE CHILDREN'S EXTENDED FAMILY."
 II {¶ 8} "THE TRIAL COURT ERRED IN GRANTING PERMANENT CUSTODY TO JOB AND FAMILY SERVICES ABSENT CLEAR AND CONVINCING EVIDENCE THAT SUCH AN AWARD WAS IN THE BEST INTERESTS OF THE CHILDREN."
 III {¶ 9} "THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN FAILING TO ADDRESS EACH OF THE FACTORS SET FORTH IN OHIO REVISED CODE SECTION 2151.414(D)."
 I, II {¶ 10} Appellant claims the trial court erred in awarding permanent custody to appellee when there was available suitable relative placement under R.C. 2151.412(G). Appellant further claims the award of permanent custody was not in the best interests of the children. We disagree.
 {¶ 11} As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment.Cross Truck v. Jeffries (February 10, 1982), Stark App. No. CA-5758. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Construction (1978),54 Ohio St.2d 279.
 {¶ 12} R.C. 2151.414(B) enables the court to grant permanent custody if the court determines by clear and convincing evidence that it is in the best interest of the child. R.C. 2151.414(D) sets out the factors relevant to determining the best interest of the child. Said section states relevant factors include, but are not limited to, the following:
 {¶ 13} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 14} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 15} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 16} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 17} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 18} R.C. 2151.412 governs case plans. Subsection (G)(5) specifically states the following:
 {¶ 19} "In the agency's development of a case plan and the court's review of the case plan, the child's health and safety shall be the paramount concern. The agency and the court shall be guided by the following general priorities:
 {¶ 20} "* * *
 {¶ 21} "If the child cannot be placed with either of the child's parents within a reasonable period of time or should not be placed with either, if no suitable member of the child's extended family or suitable nonrelative is available to accept legal custody of the child, and if the agency has a reasonable expectation of placing the child for adoption, the child should be committed to the permanent custody of the public children services agency or private child placing agency."
 {¶ 22} There is no dispute that appellant's father and stepmother, Mr. and Mrs. Berry, were suitable and the home investigation established their financial condition and home environment were suitable. In its judgment entry of December 15, 2005, the trial court acknowledged Mr. and Mrs. Berry were suitable, but specifically found the offer of placement was made too late:
 {¶ 23} "7. Out of all the potential relatives available for the Court to consider, only Mr. and Mrs. Berry provide a real option for placement. According to a home study provided to the Court, their home is very appropriate. Financial considerations do not appear to be an issue that would prevent placement with them. In many ways, Mr. and Mrs. Berry seem to be appropriate custodians. If this placement had been available earlier in the history of this case, prior to these children enduring so much instability, the Court would feel more comfortable in utilizing a placement that currently demonstrates uncertain success.
 {¶ 24} "8. After four dependency and neglect cases and numerous temporary placements for these children, their need for a final, permanent home is extremely critical. At this stage, this need has become too critical for the Court to take unnecessary chances with an uncertain placement.
 {¶ 25} "9. Mr. Berry had little or no contact with Angie as she grew up. He did not appear at any of the multiple delinquency hearings for Angie conducted prior to the time she turned 18. While the Court is sure that Angie's mother helped create the estrangement between Angie and her father, ultimately, it does not appear that Mr. Berry made much attempt to parent his daughter. Overall, the success of any placement with Mr. and Mrs. Berry is vastly unknown, especially since Angie Berry, Jason Bodenheimer, and Chris Bunton would have obvious access to these children.
 {¶ 26} "10. After weighing all the potential dispositional alternatives available to the Court, the Court does not find that placement with any known relative is in the best interest of any of these children."
 {¶ 27} The trial court's dispositional order involved appellant's three children, two of which had been the subject of intervention by appellee in 2004. T. at 163. The third child is an infant. The basis of appellee's position for permanent custody is that appellant has consistently made bad choices in men thereby putting her children at risk. T. at 123. The men and fathers of the children have at times been abusive, chemically dependent and incarcerated as felons. T. at 13, 121-123, 145, 147-148. Appellant conceded the assessment was true and it would not be in the best interests of the children for her to have custody, "Not at this time, no way." T. at 145. The incident that precipitated the filing of the complaint in this case was reported to the police by appellant. T. at 36. Appellant had left the children in Mr. Bunton's care but when she returned early from work, she could not locate Mr. Bunton or the children. T. at 9-11, 36-37. The children were found by the police in the back seat of a vehicle at 4:30 a.m. T. at 14, 38.
 {¶ 28} At one time, appellant and the two older children resided with Mr. and Mrs. Berry and they tried to help appellant get on her feet, but appellant left to pursue a custody fight involving another child unrelated to this case. T. at 151-152, 333. Appellant did not initiate the contact with Mr. and Mrs. Berry in this case, Mr. Bunton did. T. at 177. Mr. and Mrs. Berry had limited visiting time with the children as appellant kept them from visiting the children because appellant "can be stubborn at times." T. at 368.
 {¶ 29} The underlying current of appellant's testimony is that if Mr. and Mrs. Berry had custody of the children, she could have continued contact with them as could Mr. Bunton. T. at 153, 189.
 {¶ 30} Neither appellant nor Mr. Bunton can point to anything that demonstrates their ability to change their life patterns. T. at 209.
 {¶ 31} Against this background, the trial court had the unqualified opinion of the caseworker, Sandy Wood, who opined appellant had not demonstrated any efforts toward reform and that any further case plans would be futile given her poor performance on two other occasions. T. at 223-224. Ms. Wood opined the children needed to "reside in a stable safe environment." T. at 232. The two older children had already been through grandparent placement which had been terminated unsuccessfully. The children are now doing very well in their current foster home and the foster parents wish to adopt them. T. at 233-234, 238-239.
 {¶ 32} The prime issue is, given appellant's acknowledgment she is unable to provide a suitable environment for the children, what would be in the best interest of the children? We conclude the trial court's assessment is based upon the evidence and is correct. It would be a folly to once again submit the children to placement with another set of grandparents who have had minimum contact with the children. It is also the underlying theme of appellant and Mr. Bunton that such a placement would facilitate them with continued involvement with the children. Also, the evidence is clear and convincing that neither appellant nor Mr. Bunton would benefit from further case plans.
 {¶ 33} Upon review, we find the trial court did not err in granting appellee permanent custody of the children.
 {¶ 34} Assignments of Error I and II are denied.
 III {¶ 35} Appellant claims the trial court's decision is deficient because it fails to specifically address all of the factors set forth in R.C. 2151.414(D). We disagree.
 {¶ 36} From our review of the decision, the trial court stated it had considered all of the factors of R.C. 2151.414(D) and the trial court's finding, read in toto, supports such a statement given the nature of the testimony presented during the dispositional hearings.
 {¶ 37} Assignment of Error III is denied.
 {¶ 38} The judgment of the Court of Common Pleas of Tuscarawas County, Ohio, Juvenile Division is hereby affirmed.
By Farmer, P.J. Edwards, J. and Boggins, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Tuscarawas County, Ohio, Juvenile Division is affirmed.